**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| M2M SOLUTIONS LLC, | |
| Plaintiff, | |
| v. | C.A. No. 14-1101 (RGA) |
| ENFORA INC., NOVATEL WIRELESS SOLUTIONS INC., and NOVATEL WIRELESS INC., | |
| Defendants. | |
| M2M SOLUTIONS LLC, | |
| Plaintiff, | |
| v. | C.A. No. 14-1102 (RGA) |
| SIERRA WIRELESS AMERICA, INC., and SIERRA WIRELESS, INC., | |
| Defendants. | |
| M2M SOLUTIONS LLC, | |
| Plaintiff, | |
| v. | C.A. No. 14-1103 (RGA) |
| TELIT COMMUNICATIONS PLC, and TELIT WIRELESS SOLUTIONS INC., | |
| Defendants. | |

## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO 35 U.S.C. § 101

OF COUNSEL:                              STAMOULIS & WEINBLATT LLC

Wendy Verlander                          Stamatios Stamoulis #4606
wverlander@blackbird-tech.com            stamoulis@swdelaw.com

Christopher Freeman
cfreeman@blackbird-tech.com
Sean K. Thompson
sthompson@blackbird-tech.com
Blackbird Technologies
One Boston Place, Suite 2600
Boston, MA 02108
617.307.7100

Richard C. Weinblatt #5080
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

Attorneys for Plaintiff
Blackbird Tech LLC d/b/a
Blackbird Technologies

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................... 2

   I.   THE CLAIMED INVENTION.............................................................................................. 2

   II.  THE ASSERTED CLAIM.................................................................................................... 3

ARGUMENT .................................................................................................................................... 4

   I.   THE MOTION IMPROPERLY RELIES ON MATERIAL THAT CANNOT BE
        CONSIDERED ON A MOTION FOR JUDGMENT ON THE PLEADINGS ................. 5

   II.  DEFENDANTS FAIL TO SHOW THAT THE CLAIMS ARE DIRECTED TO
        PATENT-INELIGIBLE CONCEPTS .............................................................................. 7

   III. DEFENDANTS FAIL TO SHOW THAT THE CLAIMS LACK AN INVENTIVE
        CONCEPT ....................................................................................................................... 17

CONCLUSION............................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Accenture Glob. Services, GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013) ................................................................. 15, 16

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016) ................................................................. 18, 20

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
    134 S. Ct. 2347 (2014) ............................................................................. 11, 20

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ........................................................................ 5

*BASCOM Glob. Internet Services, Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ................................................................. 17, 20

*BroadSoft, Inc. v. CallWave Commun.*,
    2017 WL 4364216 (D. Del. Oct. 1, 2017) ........................................................ 14

*CardioNet, LLC v. InfoBionic, Inc.*,
    2017 WL 1788650 (D. Mass. May 4, 2017) ..................................................... 18

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014) ...................................................................... 18

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ....................................................................................... 10

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................... 13, 18, 19

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ........................................................................ 9

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ...................................................................... 14

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010) ...................................................................... 13

*GoDaddy.com LLC v. RPost Commun. Ltd.*,
    2016 WL 3165536 (D. Ariz. June 7, 2016) ..................................................... 12

*Gomery v. Versatile Mobile Sys. Inc.*,
    2008 WL 2357693 (M.D. Pa. June 4, 2008) ...................................................... 6

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
    2017 WL 3315279 (D. Del. Aug. 3, 2017),............................................................ 14

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
    2016 WL 5661981 (D. Del. Sept. 29, 2016) ......................................................... 14

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ...................................................................*passim*

*Mele v. Fed. Reserve Bank of New York*,
    359 F.3d 251 (3d Cir. 2004), as amended (Mar. 8, 2004) .................................. 5

*Netherlands Ins. Co. v. Butler Area Sch. Dist.*,
    2017 WL 2533525 (W.D. Pa. June 9, 2017) ....................................................... 6

*O'Reilly v. Morse*,
    56 U.S. 62 (1854)................................................................................................. 8

*Paone v. Broadcom Corp.*,
    2015 WL 4988279 (E.D.N.Y. Aug. 19, 2015)...................................................... 8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) .............................................................................. 5

*Personalized Media Commun., LLC v. Amazon.Com, Inc.*,
    161 F. Supp. 3d 325 (D. Del. 2015) .................................................................. 15

*Rapid Litig. Mgt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016) ........................................................................... 8

*Revell v. Port Auth.*,
    598 F.3d 128 (3d Cir. 2010) ................................................................................ 5

*Rosenau v. Unifund Corp.*,
    539 F.3d 218 (3d Cir. 2008) ................................................................................ 6

*Schmidt v. Skolas*,
    770 F.3d 241 (3d Cir. 2014) ................................................................................ 5

*Smart Meter Techs., Inc. v. Duke Energy Corp.*,
    2017 WL 2954916 (D. Del. July 11, 2017)........................................................... 9

*Torres v. Puerto Rico*,
    485 F.3d 5 (1st Cir. 2007) .................................................................................... 7

*Trading Techs. Intl., Inc. v. CQG, INC.*,
    675 F. App'x. 1001 (Fed. Cir. 2017) .................................................................... 9

iii

*Turbe v. Govt. of Virgin Islands*,
  938 F.2d 427 (3d Cir. 1991) ................................................................. 9

*Virginia Innovation Scis. Inc. v. Amazon.com, Inc.*,
  227 F. Supp. 3d 582 (E.D. Va. 2017) .............................................. 12

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017). ................................................. 9, 16

*Yakima Valley Meml. Hosp. v. Washington State Dept. of Health*,
  654 F.3d 919 (9th Cir. 2011) ............................................................... 6

## **Statutes**

35 U.S.C. § 101 .................................................................................... *passim*

35 U.S.C. § 102 ........................................................................................ 10

35 U.S.C. § 103 ........................................................................................ 10

Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies ("Blackbird") respectfully submits its Answering Brief in Opposition to Defendants' Motion to Dismiss Pursuant to 35 U.S.C. § 101 (the "Motion" or "Mot.").[1]

## PRELIMINARY STATEMENT

Having failed to invalidate all claims of the '717 patent despite having filed eight petitions for *inter partes* review, Defendants now argue, for the first time, that the claims of the '717 patent are unpatentable under Section 101 because they are directed to an abstract idea. However, Defendants are wrong and their Motion should be denied.

The claims of the '717 patent are directed to an innovative machine-to-machine module in which a particular aspect of its memory that is used to store the telephone numbers or IP addresses to which the device sends outgoing transmissions can be remotely and securely updated using a specific authentication protocol in which the information to be updated is sent to the device in a single transmission with a "coded number."  They do not recite a mathematical algorithm and are not directed to a fundamental economic or longstanding commercial process or business challenge.  They are a technical solution, secure remote programming of machine-to-machine modules, to a technical problem, the inability to remotely program modules.  In short, the focus of the claims was not to implement abstract ideas on a machine-to-machine module but rather to improve machine-to-machine modules using a specific means that is recited in the claims.  They are, therefore, patent-eligible.

Moreover, even if the claims could be considered directed to an abstract idea, they disclose an inventive concept.  Specifically, when viewed as an ordered combination, the claims

---

[1] Blackbird acquired U.S. Patent No. 8,648,717 (the "'717 patent") by assignment and, on June 21, 2017, joined these litigations as plaintiff.  (*See, e.g.*, 14-cv-01101 D.I. 56, 57.)  Thus, although M2M filed the pleadings Defendants seek to dismiss, Blackbird submits this response to Defendants' Motion, in which M2M joins.

1

recite a specific and discrete implementation of programmability or authentication, involving the updating of a particular aspect of the memory of the device using a "coded number" in a single transmission with the data to be updated. This is significantly more than the abstract idea of programmability or authentication, rendering the claims patent-eligible under Section 101.

Finally, the Motion should be denied for the independent reason that it extensively relies on materials that cannot be considered by the Court on a motion to dismiss or a motion for judgment on the pleadings. Although the parties stipulated, and the Court ordered, that Defendants would file a Rule 12 motion, Defendants have filed what amounts to a summary judgment motion, attaching more than 1,100 pages of exhibits, which are integral to Defendants' arguments. Consequently, the Motion should be denied on this basis alone.

## STATEMENT OF FACTS

## I.    THE CLAIMED INVENTION

The '717 patent is generally directed to a "programmable wireless communications apparatus." (Ex. 1 ('717 patent) at 1:30-31.[2]) The patent discloses a number of potential uses for this improved apparatus, including in what is known as "machine-to-machine" communication. In machine-to-machine communications generally, one machine, such as a computer, monitors a remotely-located second machine, such as a vending machine, by communicating with a wireless module connected with that second machine. In the '717 patent, this wireless module is the "programmable communicator," which is also referred to as a "data tag." This device acts as an intelligent intermediary gatekeeper device to control communications between the two machines.

---

[2] All exhibit citations are to the exhibits to the Declaration of Clyde Shuman filed with Defendants' Motion. (*See, e.g.*, 14-cv-01101 D.I. 70, 71.)

The specification teaches that, in the machine-to-machine field, there was, at the time of the invention, a need for a "user-programmable remote wireless communications data tag." (*Id.* at 3:52-55 ("[T]here exists the need for a user-programmable remote wireless communications data tag, which can be used to relay information about the status of a remote piece of technical equipment such as a vending machine.").) The ability of a user to remotely program these modules is important because machine-to-machine modules generally lack input devices that would allow them to be programmed if a human were present at the device and because they are commonly deployed in a geographical dispersed manner. The inventions claimed in the '717 patent filled the need for a "user-programmable remote wireless communications data tag."

## II.    THE ASSERTED CLAIM

The sole claim asserted against Defendants at this time is claim 30.[3] Claim 30 is directed to a machine-to-machine apparatus with certain capabilities. Specifically, claim 30, like claims 24-28, recites a machine-to-machine module that has a "programmable interface for establishing a communication link with at least one monitored technical device" and which "is configured to process data received through the programmable interface from the at least one monitored technical device." (*See id.* at 14:56-16-44.) The "monitored technical device" is the equipment, such as a vending machine, that the module gathers data from and about which it communicates to a monitoring technical device.

The Claims recite that the claimed modules' "memory" store "at least one telephone number or IP address . . . to which the programmable communicator device is configured to and permitted to send outgoing wireless transmissions." (*Id.*) The Claims specify that this memory

---

[3] Claims 25-28 have also not been found invalid by the by the PTAB. Although Defendants' conclusory assertion that claim 24 is representative of all remaining asserted claims (Mot. 9) is not adequate to establish representativeness, the arguments set forth herein apply equally with respect to claims 25-28 and claim 30 (collectively, the "Claims").

can be programmed through a process in which a "programming transmitter" sends a single transmission that contains a "coded number" and "at least one telephone number or IP address." (*Id*.)  The device receives the transmission and authenticates it based on the "coded number" in the transmission.  (*Id*.)  Only authenticated transmissions are allowed to update the memory containing the "telephone numbers or IP addresses" to which the device is "permitted to send outgoing wireless transmissions."  (*Id*.)

Accordingly, the Claims are directed to a machine-to-machine module in which a particular aspect of its memory that is used to store the telephone number or IP address to which the device sends outgoing transmissions can be remotely and securely updated using a specific authentication protocol in which the information to be updated is contained in a single transmission with a "coded number."  This represents an improvement over prior art machine-to-machine modules that, according to the specification, were not "user-programmable."  (*Id*. at 3:52-55.)  For example, if a vending machine were being remotely monitored with a non-user-programmable module, to the extent the user wanted to update the monitoring device with which the module communicated, the user would need to either replace the module's memory with memory that was encoded with the new telephone number or IP address information, or have a vendor update the memory on-site.  Both prior options are cumbersome and inefficient.

## ARGUMENT

Although the Motion is styled as a Motion to Dismiss, all Defendants have served responsive pleadings.  (14-cv-01101-RGA D.I. 7 (Answer); 1:14-cv-01102-RGA D.I. 5 (Answer), 23 (Answer); 14-cv-01103-RGA D.I. 42 (Answer).)   Consequently, a motion to dismiss is not proper.  *Turbe v. Govt. of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991) ("A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading.").  The Motion is only potentially proper as one for judgment on the pleadings under Rule 12(c).  *Id*.

The Federal Circuit follows regional circuit law for motions for judgment on the pleadings. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1293 (Fed. Cir. 2016). In the Third Circuit, motions for judgment on the pleadings based on the contention that the complaint fails to state a claim are decided under the same standard as motions to dismiss under Rule 12(b)(6). *Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). Accordingly, the Court "must accept the truth of all factual allegations in the complaint and must draw all reasonable inferences in favor of the non-movant." *Id.* Moreover, "[i]n deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings," with limited exceptions. *Mele v. Fed. Reserve Bank of New York*, 359 F.3d 251, 257 (3d Cir. 2004), as amended (Mar. 8, 2004).

Defendants' Motion should be denied because it improperly relies on materials that cannot be considered on a motion for judgment on the pleadings (or to dismiss), Defendants fail to establish that the Claims are directed to patent-ineligible subject matter, and Defendants fail to establish that the Claims lack an "inventive concept."

## I.   THE MOTION IMPROPERLY RELIES ON MATERIAL THAT CANNOT BE CONSIDERED ON A MOTION FOR JUDGMENT ON THE PLEADINGS

In deciding a motion for judgment on the pleadings, courts in the Third Circuit "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). Defendants' Motion, however, relies on material beyond the pleadings and not subject to a recognized exception that would allow the Court to consider it in this procedural posture. Consequently, though (erroneously) captioned as a motion to dismiss, the Motion is, in fact, one for summary judgment. Because the Motion was filed pursuant to a stipulated order permitting only the filing of a motion for judgment on the pleadings, the Motion should be denied.

Defendants rely on at least three categories of material that cannot be properly considered on a motion for judgment on the pleadings.  *First*, Defendants rely on and attach excerpts from deposition transcripts (Exhibits 6-8, 10, and 20).  However, deposition testimony and transcripts cannot be considered on a motion for judgment on the pleadings.  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 225 (3d Cir. 2008) (holding that because resolution of a claim required consideration of "deposition transcripts and other discovery materials, not solely the pleadings," district court must convert motion for judgment on the pleadings to a summary judgment motion); *Gomery v. Versatile Mobile Sys. Inc.*, 2008 WL 2357693, at *1 (M.D. Pa. June 4, 2008) (consideration of "deposition transcript" "is not appropriate upon review of a motion to dismiss").

*Second*, Defendants rely on and attach multiple expert reports (Exhibits 19 and 21) and an expert declaration (Exhibit 15), none of which may be properly considered on a motion for judgment on the pleadings.  *Netherlands Ins. Co. v. Butler Area Sch. Dist.*, 2017 WL 2533525, at *11 (W.D. Pa. June 9, 2017) ("[A]nlyz[ing] expert reports" would require this Court to step outside of the four corners of the operative Complaint, which would be an improper exercise at this juncture"); *see also Yakima Valley Meml. Hosp. v. Washington State Dept. of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) (rejecting argument that court should have considered expert reports and remarking that "the argument merits little discussion [because] [j]udgment on the pleadings is limited to material included in the pleadings").

*Third*, Defendants rely on and attach disclosures and discovery from the litigation, specifically Plaintiff's Preliminary Infringement Contentions (Exhibit 9), Defendants' Initial Invalidity Contentions (Exhibit 13), and a document produced in discovery (Exhibit 11). However, none of these documents was attached or integral to the complaint, is a public record, or otherwise a document that may be considered on a motion for judgment on the pleadings.

In light of the myriad extrinsic material improperly relied on by Defendants, the Motion is really one for summary judgment. *See Torres v. Puerto Rico*, 485 F.3d 5, 8 n.4 (1st Cir. 2007) (motion for judgment on the pleadings that "explicitly relied upon deposition transcripts and other information procured during discovery" was "the functional equivalent of a motion for summary judgment."). However, Defendants' Motion was filed pursuant to a highly-negotiated agreement among the parties providing, among other things, that these cases would remain stayed and Defendants would file a ***Rule 12 motion*** seeking dismissal pursuant to 35 U.S.C. § 101 during the pendency of the stay.[4] (*See, e.g.*, 14-cv-01101 D.I. 64 (Joint Status Report).) This was reflected in the Court's Order, which permits the filing of a "motion for judgment on the pleadings." (*See, e.g.*, 14-cv-01101 D.I. 65.) Having agreed, and been ordered, to file a motion for judgment on the pleadings, Defendants should not be allowed to instead seek summary judgment.[5] Accordingly, the Motion should be denied.

## II.   DEFENDANTS FAIL TO SHOW THAT THE CLAIMS ARE DIRECTED TO PATENT-INELIGIBLE CONCEPTS

### A.   The Claims Are Not Directed To An Abstract Idea

Defendants contend that the "patent" is "directed towards a device that is capable of authenticating an incoming message with a password, then extracting a telephone number from the authenticated message, and populating an outbound caller list with that telephone number," and is, therefore, directed to the "unpatentable abstract idea" of "[p]assword authentication." (Mot. 10-11.) However, even if the Claims could be said to involve "[p]assword authentication," "it is not enough to merely identify a patent-ineligible concept underlying the claim; [the court]

---

[4] Although Joint Status Report refers to Defendants' intention to "move to dismiss," the accompanying order makes clear that, as required by Rule 12, the motion is one for judgment on the pleadings.

[5] For these same reasons, the Motion should not be converted to one for summary judgment.

must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).  Thus, the relevant inquiry is not how the Claims appear in their "most abstract form" (Mot. 12), but whether the Claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016).  Under that standard, it is clear the Claims are not directed to an abstract idea.

The Claims are directed to a machine-to-machine module in which a particular aspect of its memory is used to store a telephone number or IP address to which the device sends outgoing transmissions.  This number or IP address can be remotely and securely programmed using a specific authentication protocol in which the information to be updated is contained in a single transmission with a "coded number."  Consequently, they are directed to a "specific means or method that improves the relevant technology." *Id*. at 1314.  They are not directed to the generic idea of "authentication" or even programmability.  They recite a particular form of authentication, in which a single transmission contains both the "coded number" that is authenticated, along with the data to be updated in memory, which is used to achieve the remote programming of a narrow aspect of the module, the memory that stores the telephone numbers or IP addresses to which outgoing wireless transmissions from the device are sent. *Cf. id*. at 1312 ("The abstract idea exception prevents patenting a result where 'it matters not by what process or machinery the result is accomplished.'" (quoting *O'Reilly v. Morse*, 56 U.S. 62, 113 (1854)); *Paone v. Broadcom Corp.*, 2015 WL 4988279, at *7 (E.D.N.Y. Aug. 19, 2015) ("[I]t is of no moment that [e]ncryption, in general, represents a basic building block of human ingenuity . . . because the . . . patent . . . claims a specific method of [encrypting data]") (quotations omitted).

8

The Federal Circuit, as well as courts in this District, have found claims, such as these, directed to specific technical solutions to technical problems, not to be directed to abstract ideas. *McRO*, 837 F.3d at 1315 (finding that the claims were not directed to an abstract idea and instead to "claimed process[es] us[ing] a combined order of specific rules" that improved on existing technological processes in the field of computer animation); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016) (finding that the claims were not directed to an abstract idea and instead to a "specific improvement to the way computers operate, embodied in [a] self-referential table"); *Trading Techs. Intl., Inc. v. CQG, INC.*, 675 F. App'x. 1001, 1004 (Fed. Cir. 2017) (agreeing with the district court's determination that the claims were not directed to an abstract idea and required "a specific, structured graphical user interface paired with a prescribed functionality . . . that is addressed to and resolves a specifically identified problem in the prior state of the art."); *Smart Meter Techs., Inc. v. Duke Energy Corp.*, 2017 WL 2954916, at *6 (D. Del. July 11, 2017) (finding that a claim directed to an improved method of measuring power consumption was not directed to an abstract idea because it "addresses a technical solution to the technical problem of connecting metering devices over power line networks").

The Claims are, in particular, similar to those found not to be directed to an abstract idea in *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017). The claims in *Visual Memory* were directed to an improved computer memory system. The accused infringer argued that the claims were directed to an abstract idea—"categorical data storage"—but the Federal Circuit held that they were not abstract because they "focus[ed] on a 'specific asserted improvement in computer capabilities'—the use of programmable operational characteristics that are configurable based on the type of processor." *Id.* at 1259-60 (quoting *Enfish*, 822 F.3d at 1336). Here, similarly, the Claims are not directed to "password authentication" generically, but

a programmable system that incorporates a specific type of authentication using a "coded number" to improve the functionality of a machine-to-machine module.  Consequently, they are not directed to an abstract idea.

### B.   Defendants' Arguments Are Unavailing

Defendants offer four primary arguments in support of their contention that the Claims are directed to an abstract idea.  Each is meritless.

### 1.   The Claims' Alleged Lack Of Novelty Is Irrelevant

Defendants seem to regard "known" as synonymous with "abstract," devoting much of their Motion to arguing that the components used in the Claims are, among other adjectives, "well-known" (Mot. 2, 8, 17, 19) and "old" (*id*. 5, 8, 14, 15, 17).  Leaving aside that Defendants' characterizations are undermined by their failure to convince the PTAB to invalidate these Claims in any of their eight attempted *inter partes* reviews, whether the Claims are valid under Sections 102 or 103 does not bear on whether they are valid under Section 101.  *Diamond v. Diehr*, 450 U.S. 175, 176 (1981) ("The questions of whether a particular invention meets the 'novelty' requirements of 35 U.S.C. § 102 or the 'nonobviousness' requirements of § 103 do not affect the determination of whether the invention falls into a category of subject matter that is eligible for patent protection under § 101.").  Defendants' attempt to achieve under Section 101 what they could not before the PTAB under Sections 102 and 103 should be rejected.

### 2.   The Claims Do Not Raise Preemption Concerns

Defendants contend that "the patent's exceptionally broad claims . . . attempt to preempt the entire machine-to-machine field."  (Mot. 2.)  However, Defendants' preemption arguments are wrong on the law and the facts.  Although Defendants seem to view the Claims as raising preemption concerns because they cover a large number of (Defendants') products, preemption requires something more.  As the Federal Circuit has explained, "[t]he preemption concern arises

when the claims are not directed to a specific invention and instead improperly monopolize 'the basic tools of scientific and technological work.'" *McRO*, 837 F.3d at 1314 (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 134 S. Ct. 2347, 2354 (2014)).  Accordingly, claims that are directed to "a result or effect that itself is the abstract idea merely invoke generic processes and machinery," *McRO*, 837 F.3d at 1317, raise preemption concerns because they preempt all implementations of the abstract idea.  But even Defendants' flawed characterization of what the patent is directed to demonstrates that it does not raise preemption concerns.  Defendants assert that the "patent" is "directed towards a device that is capable of authenticating an incoming message with a password, then extracting a telephone number from the authenticated message, and populating an outbound caller list with that telephone number."  (Mot. 10-11.)  Although that does not accurately characterize what the Claims are directed to, it clearly shows they are not merely directed to "password authentication" generically; they are, instead, highly specific.

As to the factual component of Defendants' argument, Defendants assert, without any citation, that "[a]ccording to M2M, the claims cover any machine-to-machine transponder that was connected to an antenna, regardless of: the application; the transmission format (or if the messages are transmitted at all); what type of devices transmit or receive messages; how 'coded number' authentication is performed; or how or where the messages are stored."  (Mot. 12.) M2M has never asserted that the Claims cover "any machine-to-machine transponder that was connected to an antenna."[6]  The Claims do not recite an antenna, so it is unclear why Defendants believe that connection to an antenna is required.  More importantly, the Claims do not cover "any machine-to-machine transponder . . . regardless of" application, transmission format, or any

---

[6] In particular, Defendants' unsupported assertion cannot be reconciled with the fact that not even all of Defendants' machine-to-machine products are accused of infringement.

other quality that Defendants disjunctively list.  Rather, the Claims cover only modules that are programmable and, even then, only if programmed in the specific manner recited in the Claims.

The contrast between the claims at issue in the cases cited by Defendants and the Claims here is instructive.  In *Virginia Innovation Scis. Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582 (E.D. Va. 2017), the district court held that claims that covered "converting a video signal for a mobile terminal to an 'alternative display terminal'" were directed to an abstract idea because the patent monopolized any conversion of video from a mobile device to any other display device and thus would "encompass every mobile telephone, every video signal received by that phone, and every HD display terminal [including 'televisions and computer monitors from every commercial manufacturer'] sold on the market."  *Id*. at 597.  Here, in contrast, in addition to not covering non-programmable modules, the Claims do not cover modules programmable in other ways.

Defendants reliance on *GoDaddy.com LLC v. RPost Commun. Ltd.*, 2016 WL 3165536, at *11 (D. Ariz. June 7, 2016), is similarly misplaced.  The claims at issue in *GoDaddy* were directed to "a general method of collecting and providing information about a dispatch [*e.g.*, a document or email] using a third party intermediary."  *Id*. at *10.  The claims, which were "not even limited to an electronic embodiment," were so broad that they encompassed "'all types' of information, 'all types' of dispatch methods, and 'all types' of methods and devices for 'associating' and 'securing' the authentication data."  *Id*. at *11.  The Claims here—directed to a device that has a specific part, the memory storing telephone numbers or IP addresses, that can be programmed in a specific way, *i.e.*, by sending a single transmission that contains a "coded number" and the data to be updated—do not approach such a scope.

Finally, Defendants contend that "M2M's argument that the claimed elements covered '*capability*'" is "[f]urther evidence of preemption." (Mot. 13.) It is not. Defendants cite no case in which a court determined that the fact that a claim was drawn to capability rendered it preemptive—or even more likely to preempt the field—and Blackbird is not aware of one. That a claim is infringed by a device that is "reasonably capable" of meeting its limitations, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010), does not render the claim preemptive. The limitations still dictate the scope of the claim regardless of whether it is infringed by devices capable of satisfying the limitations, and the limitations of these Claims demonstrate that they do not preempt the field.[7]

### 3.  The Claims Are Not Analogous To Claims Held To Be Abstract

Defendants assert that the Claims here are similar to those found to be directed to abstract ideas. Not so. Defendants point to the Federal Circuit's decision in *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), for the proposition that "[a]nalyzing data, i.e., 'processing' it, or authenticating a message, . . . are abstract ideas." (Mot. 10.) However, the claims in *Electric Power* were directed to "collecting" and "analyzing" information and "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions." *Id*. at 1354. Here, in contrast, the Claims are not merely directed

---

[7] Defendants also offer an assortment of analogies to human conduct, suggesting that they show that the Claims are abstract. (*See, e.g.,* Mot. 2.) However, even assuming that Defendants' analogies are well taken, "processes that automate tasks that humans are capable of performing are patent eligible if properly claimed." *McRO*, 837 F.3d at 1313. As shown above, the Claims are properly directed to non-abstract subject matter.

to a communicator device that collects information, but, rather, a communicator device that has a specific computer-functionality improvement.[8]

Defendants also point to this Court's decision in *BroadSoft, Inc. v. CallWave Commun.*, 2017 WL 4364216 (D. Del. Oct. 1, 2017), but the Claims here are not analogous to those at issue there. *BroadSoft* involved two sets of method claims. The first set involved receiving a call for a particular telephone subscriber and then automatically dialing phone numbers in a database associated with that subscriber in sequence, moving to the next number if there is no answer. *Id*. at *2. Thus, the claims recited only calling multiple numbers in sequence to reach a party, which was not "an improvement in technology . . . ." *Id*. at *6. In particular, the claims were not addressed to a technological problem. *Id*. They were, instead, designed to solve a human problem: not being available at a particular phone number. *Id*. Here, in contrast, the specification notes that there is a need for a programmable communicator device ('747 patent at 3:52-55)—a technological problem—for which the claims recite a technological solution.[9]

The second set of claims at issue in *BroadSoft* are similarly not comparable to those at issue here. Those claims were directed to a method of processing calls whereby a subscriber could specify a single phone number that would be displayed as the source of an outgoing call on callerID, although the subscriber could place the call from another phone. This Court held that

---

[8] For this same reason, Defendants' reliance on *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016), and *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279 (D. Del. Aug. 3, 2017), are unavailing. Both cases involved claims that were, unlike here, directed to merely collecting and analyzing information. *FairWarning*, 839 F.3d at 1094 ("[T]he claims here are directed to collecting and analyzing information to detect misuse and notifying a user when misuse is detected."); *Jedi Techs.*, 2017 WL 3315279, at *7 ("[T]he claims . . . are drawn to the abstract idea of matching people based on criteria such as personality traits or location.").

[9] In this procedural posture, "the Court must take the specification's statements about the purported invention to be true." *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, at *5 (D. Del. Sept. 29, 2016).

the claims did not "focus on a specific means or method that improves the relevant technology," *id*. at \*9 (quoting *McRo*, 837 F.3d at 1314), because, as with the first set of the claims, the problem the specification identified the claims as solving—"receiving a busy signal when trying to reach a called party"—was non-technical, as was the solution, *id*. at \*9.  Here, in contrast, the Claims focus on a specific means of improving machine-to-machine modules, *i.e.*, allowing the memory to be remotely reprogrammed in the specific manner specified in the Claims.

Finally, the Claims here are not comparable to those at issue in *Personalized Media Commun., LLC v. Amazon.Com, Inc.*, 161 F. Supp. 3d 325 (D. Del. 2015).  The relevant claim in *Personalized Media* was directed to "[a] method for controlling the decryption of programming," which recited "decrypting" the programming using a generic "decryptor."  Here, in contrast, the Claims are not directed to merely "programming" the device or "authenticating" transmissions.  The Claims recite a specific type of programmability that uses a narrow form of authentication, *i.e.*, sending a single transmission with a "coded number" and the data to be updated.

### 4.    The Specification Does Not Support A Finding Of Abstractness

Defendants argue that "the figures [disclosed in the specification] are boxes with functional descriptions" and that this "confirms that the claims are directed to an abstract idea." (Mot. 11.)  As an initial matter, the Section 101 analysis focuses on whether the ***claims*** are directed to an abstract idea, as the sole case Defendants cite for their argument holds.  *Accenture Glob. Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) (rejecting patent owner's arguments relying on the technical detail of the specification because "the important inquiry for a § 101 analysis is to look to the claim.").  The relevant claim limitations here are not "black boxes."  Rather, they set forth very specifically the process by which the telephone numbers or IP addresses stored in memory can be updated.

15

Moreover, Defendants misread *Accenture*.  Defendants cite *Accenture* for the proposition that a "[s]chematic diagram [in the patent's specification] showing generic components supports [a] conclusion of abstractness."  (Mot. at 11.)  However, the way in which the specification "support[ed] [a] conclusion of abstractness" in *Accenture* is irrelevant here.  In *Accenture*, the district court found the patent's method claims invalid, and the patentee did not appeal that decision.  728 F.3d at 1341.  Thus, whether the system claims were meaningfully different from the method claims was determinative.  That the specification made "little distinction between the system and method claims," including in diagrams that showed the method operating on generic computer equipment, supported the conclusion that the system claims were not different and thus invalid.  *Id.* at 1342-44.  Indeed, contrary to Defendants' suggestions, the specification in *Accenture* contained significant technical detail; the problem was the claims did not.  *Id.* at 1345 ("Although the specification . . . contains very detailed software implementation guidelines, the system claims themselves only contain generalized software components arranged to implement an abstract concept on a computer.").  Here, in contrast, the Claims recite the relevant technological details.[10]

\* \* \*

Because Defendants have failed to show that the Claims are directed to an abstract idea, the Motion should be denied.

---

[10] Defendants also state that "[n]othing in the text [of the specification] supplements [the] inadequate disclosure [of the figures]."  (Mot. 11.)  Notwithstanding that Defendants do not explain for what purpose the disclosure of the specification is "inadequate," the "adequacy" of the disclosure of the specification is not a relevant factor under Section 101.  *Visual Memory*, 867 F.3d at 1261 ("[W]hether a patent specification teaches an ordinarily skilled artisan how to implement the claimed invention presents an enablement issue under 35 U.S.C. § 112, not an eligibility issue under § 101.").

III.     **DEFENDANTS FAIL TO SHOW THAT THE CLAIMS LACK AN INVENTIVE CONCEPT**

Even if the Claims are determined to be directed to an abstract idea, they are not invalid because they disclose an inventive concept.  Specifically, the Claims disclose a "non-conventional and non-generic arrangement of known, conventional pieces."  *BASCOM Glob. Internet Services, Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) ("[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces.").

The '717 patent teaches that, at the time of the invention, there was a need for a "user-programmable remote wireless communications data tag."  (*Id*. at 3:52-55.)  The invention of the '717 patent addresses this need by applying a particular implementation of programmability, rather than generically claiming a "programmable" module.  In this way, the Claims are analogous to those at issue in *BASCOM*.  The claims in *BASCOM* were directed to "a content filtering system for filtering content retrieved from an Internet computer network." 827 F.3d at 1348 (internal quotation marks omitted).  The filtering system was "located on a remote ISP server that . . . allow[ed] individual network accounts to customize the filtering of Internet traffic associated with the account."  *Id*. at 1345.  Although the Federal Circuit found that the claims were directed to the abstract idea of content filtration, it agreed with the patentee that they contained the inventive concept of "installation of a filtering tool at a specific location, remote from end-users, with customizable filter features specific to each end user."  *Id*. at 1350.  The Federal Circuit stressed that "[t]he claims do not merely recite the abstract idea of filtering content along with the requirement to perform it on the Internet, or to perform it on a set of generic computer components," but instead "recite a specific, discrete implementation of the abstract idea of filtering content."  *Id*.

Here, the Claims recite a "specific, discrete implementation" of programming, whereby the memory that is used to store the telephone number or IP address to which the device sends outgoing transmissions can be remotely and securely updated using a specific authentication protocol in which the information to be updated is contained in a single transmission with a "coded number." This is "significantly more" than the abstract idea of programmability or "password authentication." *Id.* at 1349; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014) (finding inventive concept where the claims "recite a specific way to automate the creation of a composite web page by an 'outsource provider'"); *CardioNet, LLC v. InfoBionic, Inc.*, 2017 WL 1788650, at *5 (D. Mass. May 4, 2017) (finding inventive concept in claim directed to "[a] method of monitoring a patient" that involved a generic "remote monitoring unit" that transmitted data to a central unit "selectively," rather than automatically" because the claim "purports to improve upon the previous technology, which did not allow for selectivity in determining the data set that would be transmitted to the central unit.").

Defendants make two primary arguments in support of their contention that the Claims lack an inventive concept, but each is unavailing. Defendants initially contend that the Claims are "functional," which Defendants equate to being drawn to capability, and argue that such "functional" claiming "is inconsistent with section 101's requirements." (Mot. 14). However, Defendants have misunderstood what is meant by a "functional" claim in the Section 101 context. A "functional" claim is directed to a result, with no indication of how that result is to be achieved, as the cases on which Defendants rely demonstrate. *See, e.g.*, *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016) ("[T]he claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the

claim to a particular solution to an identified problem."). Thus, a functional claim covers "any way" of achieving a goal rather than "some specific way." *Electric Power*, 830 F.3d at 1356.

The Claims do not cover a module that is programmable in "any way." Rather, they specify a module where a specific aspect of it is programmable in a narrowly defined way. That the Claims may cover specific modules that are ***capable*** of being so programmed does not change the fact that the Claims specify the ***way*** such programming is accomplished, not the result of being programmed. This takes them out of the realm of "functional" claims. *Electric Power*, 830 F.3d at 1356 (highlighting "an important common-sense distinction between ends sought and particular means of achieving them, between desired results (functions) and particular ways of achieving (performing) them").

Defendants next walk through the components recited in the Claims, asserting that each was known and embodies "an unpatentable abstract process." (*See, e.g.*, Mot. 16.) However, there are three fatal flaws in Defendants' step two analysis. ***First***, and most fundamentally, Defendants fail to undertake an analysis of the Claims as ordered combinations. Particularly in light of the specification's disclosure that the invention is "a novel combination of existing technologies and features," ('747 patent at 9:16-21), it is clear that the inventive concept to be found here is in the ordered combination of the limitations, but Defendants fail to analyze this issue, offering only conclusory statements that whether viewed as individual elements or "an ordered combination . . . [the Claims] are an agglomeration of old parts, used in conventional ways, to yield old, predictable results." (Mot. 14.) Even if that were true, it is not enough for Defendants to prevail here.

***Second***, Defendants' continued focus on whether the claims are novel is misplaced. Whether each individual component was known is not itself indicative of a lack of inventive

concept. *BASCOM*, 827 F.3d at 1350 (rejecting district court's analysis of ordered combination where analysis was "similar to an obviousness analysis under 35 U.S.C. § 103," noting that "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art.").

*Third*, contrary to Defendants' approach, the step two analysis does not involve examining whether each individual component or limitation—rather than the claim as a whole—is directed to an abstract idea. Rather, a court must examine whether a claim that has, by definition, been determined to be directed to an abstract idea, "contains an 'inventive concept'" sufficient to "transform" the claimed abstract idea into a patent-eligible application," as opposed to "simply stat[ing] the [abstract idea] while adding the words 'apply it,'" *Alice*, 134 S. Ct. at 2357, on, for example, a computer.

This deficiency in Defendants' analysis can be seen in its assessment of the "programmable interface" limitation. Relying on *Affinity Labs*, Defendants assert that "interfaces that facilitate communications between devices [are] an unpatentable, abstract idea." (Mot. 15 (citing "*Affinity I* at 1271 ('customized user interface' is an abstract idea)")). It is true that in *Affinity Labs*, the Federal Circuit found that "[t]he term 'customized user interface' . . . covers the general idea of customizing a user interface . . . [and that] the basic concept of customizing a user interface is an abstract idea." *Id*. at 1271. However, it did that in step one of the *Alice* analysis, *id*., and then went on to the second step of the *Alice* inquiry, which Defendants have failed to meaningfully do. When the Claims are viewed as an ordered combination, it is clear that they recite "specific, discrete implementation" of programming that renders them patent-eligible. *BASCOM*, 827 F.3d at 1348.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion.

Dated: November 3, 2017

OF COUNSEL:

Wendy Verlander
wverlander@blackbird-tech.com
Christopher Freeman
cfreeman@blackbird-tech.com
Sean K. Thompson
sthompson@blackbird-tech.com
Blackbird Tech LLC d/b/a
Blackbird Technologies
One Boston Place, Suite 2600
Boston, MA 02108
617.307.7100

STAMOULIS & WEINBLATT LLC

*/s/ Stamatios Stamoulis*
Stamatios Stamoulis #4606
stamoulis@swdelaw.com
Richard C. Weinblatt #5080
weinblatt@swdelaw.com
Two Fox Point Centre
6 Denny Road, Suite 307
Wilmington, DE 19809
Telephone: (302) 999-1540

*Attorneys for Plaintiff*
Blackbird Tech LLC d/b/a
Blackbird Technologies

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2017, I electronically served the forgoing document on all counsel of record in this action.

/s/ Stamatios Stamoulis
Stamatios Stamoulis #4606