IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

M2M SOLUTIONS LLC and BLACKBIRD
TECH LLC d/b/a BLACKBIRD
TECHNOLOGIES,

    Plaintiffs,

  v.

SIERRA WIRELESS AMERICA, INC. and
SIERRA WIRELESS INC.,

    Defendants.

Civil Action No. 14-cv-01102-RGA

MEMORANDUM

    The Magistrate Judge filed a Report and Recommendation ("the Report") (D.I. 203) on Defendants' Motion for Summary Judgment. (D.I. 165). The Report recommends granting summary judgment of noninfringement under the doctrine of equivalents, granting the motion with regard to the "exclusive set of numbers" limitation, and denying summary judgment on all remaining issues. (*Id.* at 1). The Report further recommends denying Defendants' *Daubert* motion to exclude Mr. Wacek's expert testimony and granting Defendants' *Daubert* motion to exclude Mr. Geier's expert testimony. (*Id.*).

    Both parties have filed Objections and Responses to various aspects of the Report. (D.I. 208, 209, 211, 212). I will ADOPT its recommendations to which there is no objection.

    I will review each objection in turn.

I.    BACKGROUND

    The instant case concerns claims 25-27 of U.S. Patent No. 8,648,717 (the '717 Patent). The '717 Patent discloses a programmable communication device which can establish a communication link with a monitored technical device and authenticate transmissions. '717

Patent 14:54-67, 15:1-18. After several IPRs and the Court's claim construction, which are detailed in the Report, only claims 25-27 survive. (*See* D.I. 203 at 2-4).

Defendants (collectively "Sierra") moved for summary judgment on the grounds of collateral estoppel, law of the case,[1] unpatentable subject matter under § 101, noninfringement under the doctrine of equivalents, noninfringement of the "exclusive set of numbers" limitation, noninfringement by the accused non-SIM embedded module products of the "processing module" or "configured to use a memory" limitations, noninfringement by the AR7552 of the "processing module" or "configured to use a memory" limitations, and noninfringement of "programmable communication" limitation. (D.I. 166). Sierra also moved to exclude the testimony of Mr. Wacek and Mr. Geier under *Daubert*. (*Id*. at 36-40).

The Report set forth the relevant facts and law and I will not repeat them here. I review all objections to the summary judgment rulings *de novo*. 28 U.S.C. § 636(b)(1). I review the *Daubert* rulings under the more deferential "clearly erroneous and contrary to law" standard. *See Magnetar Techs. Corp. v. Six Flags Theme Parks, Inc*., 61 F. Supp. 3d 437, 441 (D. Del. 2014).

## II.    DISCUSSION

### A.  Plaintiffs' Objections

M2M objects to the Report's conclusions on noninfringement and the exclusion of the expert opinion of Mr. Geier. (D.I. 208 at 1). The Report recommended granting summary judgment of noninfringement as to the "exclusive set of numbers" limitation after finding that

---

[1] Sierra dropped its motion for summary judgment based on the law of the case doctrine. (D.I. 203 at 14).

2

M2M did not identify a disputed issue of fact sufficient to indicate that the Accused Products satisfied this limitation. (D.I. 203 at 24).

In the Claim Construction Order, I explained that the "exclusive set of numbers" limitation is not restricted to a "particular type" of transmission. (D.I. 140 at 13). Sierra's expert, Dr. Negus, performed testing on the accused products which indicated that they were capable of sending transmissions to numbers outside of those on the "exclusive list." (D.I. 203 at 24 (citing D.I. 167, Ex. O at ¶¶ 60-99)). As described in the Report, M2M's expert, Mr. Geier, objected that Dr. Negus' testing was seriously flawed. (*See id.*). However, M2M did not move to exclude or challenge Dr. Negus' report under *Daubert*. (*Id*. at 24 n.9).

The Report found summary judgment appropriate because Mr. Geier had "confirmed" Dr. Negus' conclusions when he stated that the Accused Products "may allow outgoing data transmissions to addresses that have not been stored in the secure phonebook." (*Id*. at 24 (citing D.I. 178, Ex. 3 at ¶¶ 22-41, 44, 137)).

M2M argues that its expert's objections to the methodology of Dr. Negus' report and its expert's statement, "I disagree that Dr. Negus's testing shows that my infringement conclusions were incorrect, or that the Accused products do not infringe the asserted claims," creates a dispute of material fact. (D.I. 208 at 3). Additionally, M2M asserts that the Report misinterpreted Mr. Geier's statement (quoted above) and that the term "may" should not be read as confirmation of Dr. Negus' test results. (D.I. 208 at 4-5).

While I agree that Mr. Geier may not have intended to confirm the results, I concur with the Report's findings that M2M has not pointed to a disputed issue of fact sufficient to survive summary judgment. M2M does not cite to any evidence in the record that suggests that the Accused Products can only make outgoing transmissions to an exclusive set of numbers

3

consistent with the claim limitation; instead, M2M's briefing criticizes the methodology employed by Dr. Negus. (*Id*. at 3). M2M's objections may be the appropriate subject of a *Daubert* motion, but M2M does not cite any authority for the proposition that critiquing an expert's methodology in the absence of a motion to exclude the testimony is sufficient to create a material dispute of fact.

I also agree with the Report's finding that Mr. Geier's opinions regarding the "exclusive set of numbers" are inconsistent with the Court's claim construction. (D.I. 203 at 41).[2] As such, I ADOPT the conclusions of the Report and Recommendation as to the "exclusive set of numbers" limitation and Mr. Geier's testimony.

### B. Defendants' Objections

Sierra objects to the Report's findings as to collateral estoppel. (D.I. 209 at 1). The Report concluded that the PTAB's invalidity determinations as to claims 1, 12, 24, and 29 made during the IPR proceedings should not be extended to claims 25-27. (D.I. 203 at 9). Sierra argues that the Report's conclusion is inconsistent with Federal Circuit precedent, citing *XY v. Trans Ova*, 890 F.3d 1282 (Fed. Cir. 2018). (D.I. 209 at 3).

In the underlying briefing, Sierra argued that all four prongs of the Third Circuit's test for issue preclusion are satisfied. (D.I. 166 at 8). First, based on similarities of claim language, there is an "identity of issues" between claims 25-27 and those litigated and invalidated before the

---

[2] M2M states that they are not objecting to the Report's findings on claim construction but that Mr. Geier's statements on the "exclusive set of numbers" limitations were made in response to Dr. Negus' interpretation of the term. (D.I. 208 at 4 n.3). Regardless, as M2M does not object to the Report's findings on claim construction, I find no clear error in the Report's conclusion that the cited statements from Mr. Geier are inconsistent with the Court's claim construction order. If M2M wished to challenge what Dr. Negus says about the claim term, M2M could have challenged the cited expert report under *Daubert*. Further, M2M does not provide any disputed statements from Dr. Negus for the Court's review, only a single paragraph from Mr. Geier's expert report. (*See id.* (citing D.I. 178, Ex. 3 at ¶ 136)).

PTAB. (*Id* at 7-11). Second, the relevant issues were actually litigated before the PTAB. (*Id*. at 15). Third, the PTAB's findings, including its ultimate obviousness finding, were "essential" to its final decision. (*Id*.). Lastly, M2M actually participated in the IPR proceedings while Blackbird acquired rights to the '717 Patent later and elected not to appeal the decisions. (*Id*.).

In its response, M2M argued that collateral estoppel cannot apply because the PTAB and this Court apply different evidentiary standards. (D.I. 177 at 4).[3] M2M also argues that collateral estoppel is improper because a material factual dispute exists between the parties' experts as to the plain and ordinary meaning of the term "to process data." (*Id*. at 7).[4] The PTAB construed "process data" under a BRI ('broadest reasonable interpretation") standard during the Sierra IPR but the parties did not seek claim construction of "process data" during the instant case. (*See* D.I. 140).

The Report agreed with M2M, focusing on the parties' dispute concerning the term "process data." (D.I. 203 at 13). Sierra objected, arguing that the combination of Federal Circuit cases *XY v. Trans Ova* and *Ohio Willow Wood Co. v. Alps S. LLC* point to a different result. (D.I. 209 at 4).

The Court in *XY v. Trans Ova* held that a final judgment from the PTAB "has an immediate issue-preclusive effect on any pending or co-pending actions involving the patent." 890 F.3d at 1294. The Court held as such over a dissent arguing that different burdens of proof

---

[3] M2M did not appear to meaningfully challenge Sierra's assertions that the asserted claims are not materially different from the invalidated claims, or any other prong of the test for collateral estoppel beyond what is discussed above.

[4] The parties, as did the PTAB, refer to the term as "process data" even though I would refer to it as "to process data," since "process" is a verb rather than a noun or an adjective in the claim. The term appears in independent claim 24, which was invalidated by the PTAB, and also in dependent claim 25. '717 Patent 15:16, 21.

between the PTAB and the district court urged a different result. *Id*. at 1300-01 (Newman, J., concurring-in-part, dissenting-in-part).  Subsequently, district courts have interpreted *XY v. Trans Ova* to stand for the position that differing burdens of proof will not prevent the application of collateral estoppel to PTAB decisions that meet all other requirements. *See Cisco Sys., Inc v. Capella Photonics, Inc*., 2020 WL 4923697, at *5 (N.D. Cal. Aug. 21, 2020) (discussing *XY v. Trans Ova*); *Intell. Ventures I, LLC v. Lenovo Grp. Ltd*., 370 F. Supp. 3d 251, 256 (D. Mass. 2019) (same); *Fellowes, Inc. v. Acco Brands Corp*., 2019 WL 1762910, at *6 (N.D. Ill. Apr. 22, 2019) (same); *but see Papst Licensing GmbH v. Samsung Elecs. Co*., 403 F. Supp. 3d 571, 602 (E.D. Tex. 2019) (reaching the opposite conclusion concerning *XY v. Trans Ova*).

   Sierra also cites to several Federal Circuit cases, including *Ohio Willow Wood*, which held that unadjudicated claims may still be subject to collateral estoppel so long as "the differences between the unadjudicated patent claims and adjudicated patent claims do not materially alter the question of invalidity." 735 F.3d 1333, 1342 (Fed. Cir. 2013); *cf. Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319 (Fed. Cir. 2015) ("Complete identity of claims is not required to satisfy the identity-of-issues requirement for claim preclusion").

   I agree that the combination of these lines of cases suggests that collateral estoppel applies here.  M2M has not disputed Sierra's assertion that the claims at issue are not materially different from invalidated claims 1, 12, and 29 (D.I. 209 at 2; D.I. 165 at 10-11), nor has M2M challenged any remaining prong of the issue preclusion analysis beyond raising the "process data" dispute. In its response briefing, M2M argues, as the Report found (D.I. 203 at 10), that *SkyHawke Techs.* v. *Deca Int'l Grp.* should govern the result in this case. (D.I. 211 at 4).  There, the Federal Circuit held that claim constructions by the PTAB do not have issue preclusive

effect. 828 F.3d 1373, 1376 (Fed. Cir. 2016). However, I do not believe that the result here is inconsistent with the Court's holding in *SkyHawke*. Per the Court's decision in *XY v. Trans Ova*, I must grant issue preclusive effect to PTAB's invalidity decision despite differences in the claim construction standards that would naturally arise upon review by the district court. *Cisco Sys.*, 2020 WL 4923697, at *5 (stating that "*Sky Hawke* did not diminish *XY's* holding that preclusive effect must be given to the PTAB's decision on invalidity despite differences in the standard of claim construction or validity").

      Additionally, I note that I do not believe that M2M has raised a dispute of material fact as to the plain and ordinary meaning of the term "process data." The briefing cites three paragraphs of Mr. Geier's expert report wherein he offers an opinion as to how a POSITA would understand the term "processing data." (D.I. 178-1, Ex. 1 ¶¶ 16-18). The only non-*ipse dixit* support cited in Mr. Geier's report for his opinion is the '717 specification. (*Id*. at ¶ 17). Analyzing the patent specification is not determining the plain and ordinary meaning; it is claim construction, pure and simple, and, as the Federal Circuit has said many times, is the judge's job, not an expert's. *See EMC Corp. v. Pure Storage, Inc.*, 2016 WL 77542, at *3 (D. Del. Feb. 25, 2016). As such, Mr. Geier's improper and otherwise cursory "plain meaning" opinion does not suffice to create a dispute of material fact.

      For the reasons stated above, I decline to adopt the findings of the Report and Recommendation and instead find that collateral estoppel applies to claims 25-27. There is no remaining dispute between the parties that would materially alter the question of invalidity that was adjudicated before the PTAB. *See Ohio Willow Wood*, 735 F.3d at 1342.

      Lastly, Sierra challenges the Report's conclusion that the '717 Patent is not directed to an abstract concept. While I agree that the content of the '717 Patent is similar to the technology

held unpatentable in *Chamberlain Group*, I agree with the Report's finding that Sierra's arguments "would oversimplify the claims and ignore the express recitation of concrete elements in those claims." (D.I. 203 at 19). Thus, I ADOPT the Report and Recommendations findings as to *Alice* Step One.

### III.     CONCLUSION

An appropriate order will issue.

/s/ Richard G. Andrews<br>
United States District Judge