IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

M2M SOLUTIONS LLC and BLACKBIRD
TECH LLC d/b/a BLACKBIRD
TECHNOLOGIES,

                               Plaintiffs;                   Civil Action No. 14-1102-RGA

         v.

SIERRA WIRELESS AMERICA, INC.
and SIERRA WIRELESS INC.,
                          Defendants.

MEMORANDUM OPINION

Stamatios Stamoulis, Richard C. Weinblatt, STAMOULIS & WEINBLATT LLC, Wilmington, DE;

        Attorneys for Plaintiffs M2M Solutions LLC and Blackbird Tech LLC d/b/a Blackbird
        Technologies.

Wendy Verlander, Jeffrey D. Ahdoot, Blackbird Tech LLC d/b/a Blackbird Technologies,
Boston, MA;

        Attorneys for Plaintiff Blackbird Tech LLC d/b/a Blackbird Technologies.

Thomas C. Grimm, Jeremy A. Tigan, Sarah E. Simonetti, MORRIS, NICHOLS, ARSHT & TUNNELL
LLP, Wilmington, DE; Jennifer Hayes, NIXON PEABODY LLP, Los Angeles, CA; Ronald F.
Lopez, NIXON PEABODY LLP, San Francisco, CA;

        Attorneys for Defendants.

January 3, 2022

1

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before me is Defendants' motion for attorney fees under 35 U.S.C. § 285.  (D.I. 218).  I have considered the parties' briefing.  (D.I. 219, 224, 227).  For the following reasons, I will GRANT Defendants' motion.

## I.    BACKGROUND

Plaintiff M2M sued the Sierra Defendants for infringement of U.S. Patent No. 8,648,717 ("the '717 patent") on August 26, 2014.  (D.I. 1).  M2M subsequently assigned all patent rights to Blackbird, who I ordered joined as Plaintiff in this action on June 21, 2017.  (D.I. 50; D.I. 234).

Between the filing of M2M's complaint and the dispositive motions, the '717 Patent claims were whittled down from thirty to three.  A series of inter partes reviews ("IPRs") invalidated claims 1-24 and 29. (D.I. 167-1, Ex. B at 64; D.I. 167-1, Ex. C. at 62).  I found Claims 28 and 30 invalid for indefiniteness at the claim construction phase.  (D.I. 140 at 10).  Thus, by the summary judgment stage of the case, only claims 25 to 27 were at issue.  (*See* D.I. 203 at 4).

On December 4, 2020, a magistrate judge issued a Report and Recommendation recommending I grant-in-part Sierra's motion for summary judgment.  (D.I. 203).  In short, the Report recommended that I grant summary judgment of non-infringement, but deny summary judgment of invalidity.  I adopted much of the Report, but sustained Sierra's objection to the Report's finding that collateral estoppel did not apply to claims 25-27.  (D.I. 213 at 7).[1]  Thus, I

---

[1] The collateral estoppel issue was one on which reasonable minds could differ, as there was a split of authority in district court decisions interpreting Federal Circuit caselaw.

granted summary judgment of non-infringement and invalidity.  On May 19, 2021, I issued a

final judgment in the case.  (D.I. 231).  There has been no appeal.

## II.   LEGAL STANDARD

The Patent Act provides, "The court in exceptional cases may award reasonable attorney

fees to the prevailing party."  35 U.S.C. § 285.  Under the statute there are two basic

requirements: (1) that the case is "exceptional" and (2) that the party seeking fees is a "prevailing

party."  The Supreme Court defined an "exceptional" case as "simply one that stands out from

others with respect to the substantive strength of a party's litigating position (considering both

the governing law and the facts of the case) or the unreasonable manner in which the case was

litigated."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of

their discretion, considering the totality of the circumstances."  *Id.*  The Supreme Court has

provided a non-exclusive list of factors for district courts to consider in deciding whether a case

is exceptional, including frivolousness, deterrence, motivation, and objective unreasonableness

in the factual and legal components of the suit.  *Id.* at 554 n.6.

## III.   DISCUSSION

Plaintiffs do not contest that Sierra is the prevailing party on the merits.  (*See* D.I. 224).

The only issue is whether this case is exceptional.  Sierra asserts that it is for several reasons.

Sierra's most weighty contention is that Plaintiffs relied on "meritless claim constructions" in

support of their infringement position.  (D.I. 219 at 12).  I agree.

The three asserted patent claims require a programmable communicator device that can

control the data transmitted between at least two devices.  (D.I. 140 at 1).  After a *Markman*

hearing, I construed the claim term, "numbers to which the programmable communicator device

is configured to and permitted to send outgoing wireless transmissions" as "the exclusive set of numbers to which the programmable communicator is limited to send any outgoing wireless transmissions." (*Id.* at 13). I explained in the *Markman* memorandum, "The[] uses of the patented invention involve limited and quick communications. These uses do not suggest that broader communication options, let alone the ability to dial a number or connect to an IP address not already programmed into the device, are contemplated by the patent." (*Id.* at 14). I further explained, "The patent does not support the construction that 'the exclusive set of numbers to which the programmable communicator is limited to' sending outgoing wireless transmissions only limits a 'particular type' of transmission but does not limit transmissions of a different type." (*Id.* at 13). In short, the claimed device could only send wireless transmissions to the "exclusive set of numbers."

Plaintiffs' opening expert report on infringement asserted to the contrary, "'the exclusive set of numbers' to which the device is permitted to send outgoing wireless transmissions is not every number the device can call. Rather, they are 'numbers' that are included in transmissions authenticated by having a coded number and stored[.]" (D.I. 167-1, Ex. F at 40-41). This flatly contradicts my claim construction memorandum, where I explained that the patent did not contemplate "broader communication options" such as dialing numbers or connecting to IP addresses "not already programmed" (that is, coded and stored) on the device. (D.I. 140 at 14).

Plaintiffs relied on this expert opinion in their opposition to summary judgment and rested their infringement arguments upon a distinction between "authenticated numbers" and "un-authenticated numbers." (D.I. 177 at 24-25). According to Plaintiffs, the "exclusive set of numbers" only included authenticated numbers, and "unrelated outgoing data calls are not authenticated or stored and thus fall outside the scope of the Asserted Claims." (*Id.* at 25). This

4

argument disregards the claim construction itself, which limits "any outgoing wireless transmissions" to "the exclusive set of numbers." (D.I. 148 at 3). Plaintiffs' argument further disregards the *Markman* memorandum, which clearly stated that there are no sub-types of transmissions which are not limited to the exclusive set of numbers. (D.I. 140 at 13). Rather, I agreed with Defendants "that all outbound transmissions must have numbers that are authenticated and on the list." (*Id.*). Finally, Plaintiffs' argument disregards the purpose of the invention. As I explained in my claim construction opinion, "The point of the invention in the mobile phone context, as set out in the specification, is to create a restricted-use mobile phone for a child to prevent 'uncontrolled calling.'" (D.I. 140 at 13-14). Plaintiffs' argument that a device intended to prevent "uncontrolled calling" by a child could make "unauthenticated" outgoing texts or calls is contrary to the purpose of the invention and wholly unsupported by my claim construction opinion. (D.I. 177 at 26).

I therefore find Plaintiffs' infringement position objectively baseless. "While an adverse claim construction generally cannot, alone, form the basis for an exceptional case finding, . . . a party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims, especially after an adverse claim construction." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013). After my claim construction order, Plaintiffs had the option of stipulating to non-infringement and appealing the adverse claim construction. Alternately, Plaintiffs could have dropped the case. Instead, Plaintiffs unreasonably prolonged litigation by asserting an infringement position that was contrary to the claim construction. I find that this renders the case exceptional.

In reply to Sierra's motion for attorney fees, Plaintiffs insist that their infringement positions were "supported and reasonable." (D.I. 224 at 5). They further explain that the

offending summary judgment argument was an "alternative" argument in response to Sierra's

expert testing, which they believed to be "deeply flawed." (*Id.* at 6, 15). In response to Sierra's

evidence of noninfringement at summary judgment, Plaintiffs had the burden of producing

evidence to show a genuine dispute of material fact. At summary judgment, "M2M [did] not cite

to any evidence in the record that suggests that the Accused Products can only make outgoing

transmissions to an exclusive set of numbers consistent with the claim limitation[.]" (D.I. 213 at

3-4). Plaintiffs instead attacked Sierra's expert's methodology and alternately advanced an

argument that flatly contradicted my claim construction. Even if Plaintiffs had succeeded on

their argument about Sierra's expert testimony, they still would have failed to meet their burden

of proof because their "exclusive set of numbers" argument was meritless and they failed to offer

any other evidence that the accused products infringed. Under these circumstances, Plaintiffs

needlessly prolonged litigation by asserting baseless arguments.

      Plaintiffs also argue that they were not on notice that their infringement position was

baseless. (D.I. 224 at 4-5). I disagree. I issued the *Markman* memorandum on claim

construction on November 26, 2019. (D.I. 140). At that point, Plaintiffs had access to discovery

from an earlier case along with some discovery from the case at hand. (D.I. 219 at 4). Sierra's

January 13, 2020 Supplemental Responses to Blackbird's First Set of Interrogatories stated:

> In the accused products, even if the facility lock feature in the SIM card is
> enabled, the accused products are still able to send data transmissions to a remote
> server. Because the accused products can still send data transmissions to the
> remote server, the [Fixed Dialing Number phonebook] is not an exclusive set of
> numbers to which the programmable communicator is limited to send any
> outgoing wireless transmissions.

(D.I. 220-1, Ex. C at 13). Sierra also sent Plaintiffs a notice letter on January 29, 2020

explaining that Sierra's products could transmit data to numbers or addresses not stored in the

device. (D.I. 220-1, Ex. B at 3). At this point, Plaintiffs knew about the adverse claim

construction and were on notice that Sierra's products did not meet the "exclusive set of numbers" claim limitation.

Sierra requests attorney fees from at least the date of the *Markman* memorandum.  (D.I. 219 at 16).  "At that point," Sierra argues, "Plaintiffs had relevant evidence demonstrating that Sierra could not possibly infringe claims 25-27 and that claims 25-27 were invalid based on the findings in the IPR Final Written Decisions."  (*Id.*).  For the following reasons, I will instead award attorney fees from the date of Sierra's January 29, 2020 notice letter.

First, I do not find, as Sierra argues, that Plaintiffs' invalidity argument merits attorney fees.  Plaintiffs' invalidity argument was a reasonable position.  The magistrate judge recommended I deny summary judgment of invalidity.  The issue was one on which reasonable minds could differ.  Thus, the invalidity argument was not objectively baseless.

Second, there is no conduct prior to the *Markman* memorandum that renders this case exceptional.  Sierra argues that some of Plaintiffs' conduct prior to claim construction renders this case exceptional because Plaintiffs engaged in vexatious litigation tactics.  (*Id.* at 14).  Sierra cites recalcitrant deponents, Plaintiffs' production of approximately one hundred documents after the close of discovery, Plaintiffs' failure to disclose relevant evidence and arguments prior to expert reports, and Blackbird's tactics in other litigation.  (*Id.* at 14-15).[2]  Plaintiffs contest Sierra's characterization of events and offer their own side of the story.  (D.I. 224 at 17-18).  Regarding the discovery conduct and expert reports, Sierra should have brought—and at times did bring—issues before the court as they arose.  For instance, I considered Plaintiffs' failure to disclose relevant evidence and arguments prior to expert reports and allowed Sierra to submit a

---

[2] Sierra describes additional conduct in its statement of facts.  I address only those events that Sierra relies upon in its argument section.

supplemental report.  (D.I. 172).  I will not look to Blackbird's conduct in other litigation to support a finding of vexatious litigation tactics in the case at hand.  Sierra has not made a showing of vexatious litigation tactics and therefore is not entitled to fees prior to the *Markman* memorandum.

Finally, while Plaintiffs arguably had notice of their weak litigation position from the time of my *Markman* memorandum, I do not believe that the clock started running on that date. After an adverse claim construction, a reasonable litigant would take time to reevaluate their infringement positions and to determine next steps.  I think that at the time of Sierra's January 29, 2020 notice letter, Plaintiffs should have been aware that their litigating position was exceptionally weak.  Thus, I will award Sierra attorney fees for the period of time after Sierra's January 29, 2020 notice letter.[3]

I will not, however, award Sierra expert fees.  Sierra cites *MarcTec, LLC v. Johnson & Johnson* for the proposition that I can grant expert fees on a Section 285 motion.  (D.I. 219 at 15 (citing 664 F.3d 907 (Fed. Cir. 2012))).  An award of expert fees is a sanction in excess of the statute and "is reserved for cases where the district court makes a finding of fraud or bad faith whereby the very temple of justice has been defiled."  644 F.3d at 921 (cleaned up).  On this record, I cannot and do not make a finding of fraud or of bad faith.  Sierra has not shown such a level of misconduct.  I will therefore not award expert fees.

---

[3] At the time of the motion for attorney fees, Sierra estimated that its attorney fees were about $530,000 (D.I. 219 at 17), but the starting date for that estimate appears to be November 26, 2019, the date of the *Markman* memorandum (*id*. at 9).

**IV.     CONCLUSION**

An appropriate order will issue.  The parties will be asked to submit a joint status report including a stipulation as to the amount of attorney fees.  In the absence of agreement, Sierra should file a motion within twenty-one days of the submission of the status report.